Adam M. Koss - 245465
akoss@kossfirm.com
Catherine E. Koss – 244857
ckoss@kossfirm.com
KOSS FIRM APC
1730 S. Amphlett Boulevard, Suite 202
San Mateo, CA 94402
Telephone:   (650) 753-1810
Facsimile:   (650) 753-1831

Attorneys for Plaintiffs GORDON KING AND
DONNA RAE KING

UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| GORDON KING and DONNA RAE KING, | Case No. |
|---|---|
| Plaintiffs, | |
| v. | **COMPLAINT FOR DAMAGES** |
| PORTFOLIO PRESERVATION, LLC dba AEGIS SHIELD, AEGIS AMERICAN RISK MANAGEMENT GROUP, LLC, KINGSLEY CHARLES, NMS INC., and DOES 1 through 50, inclusive, | |
| Defendants | |

## **DEMAND FOR JURY TRIAL**

Plaintiffs GORDON KING and DONNA RAE KING hereby demand a jury trial as provided by Rule 38(a) of the Federal Rules of Civil Procedure and allege as follows:

## **INTRODUCTION**

1. This is an action concerning a predatory financial services scheme whereby a fraudulent tax scheme is sold to unsuspecting individuals – many of whom are seniors – under the guise of an "investment strategy" based upon taking large deductions as an operating loss on tax returns. Once the investment is purchased by the unsuspecting consumers, the consumers are directed to an accountancy firm who, knowing that the deductions are inappropriate and likely to result in an audit, tax deficiencies and resulting penalties and interest, nevertheless prepared the returns and then represented the investors

through audit proceedings. Ultimately, this scheme caused Plaintiffs, and countless other investors, to lose not only their initial investment, but also to suffer massive tax consequences and underpayment penalties and interest.

**JURISDICTION AND VENUE**

2. This court has subject matter jurisdiction pursuant to 28 USC § 1332.

3. Venue is proper in this Court under 28 USC § 1391(b) because a substantial part of the events or omissions giving rise to the claim occurred in this District.

**PARTIES**

4. Plaintiffs GORDON KING and DONNA RAE KING (collectively "PLAINTIFFS" or "the KINGS") are individuals and now, and at all relevant times mentioned in this Complaint were, residents of San Joaquin County, California.

5. Defendant PORTFOLIO PRESERVATION, LLC dba AEGIS SHIELD is an expired LLC in Colorado. Defendant AEGIS AMERICAN RISK MANAGEMENT GROUP, LLC is a voluntarily dissolved Colorado Corporation. (Collectively, PORTFOLIO PRESERVATION, LLC dba AEGIS SHIELD AEGIS, AEGIS AMERICAN RISK MANAGEMENT GROUP, LLC, and DOES 1-15 and 26-40, identified below, are referred to herein as "AEGIS.") AEGIS tricked PLAINTIFFS into investing in a leveraged forward contract tax scheme by presenting it as an asset protection retirement savings plan.

6. KINGSLEY CHARLES ("CHARLES") is an individual. On information and belief, CHARLES is a resident of the State of Florida.

7. Defendant NMS INC. is an Ohio Corporation. (Collectively, NMS INC. and DOES 16-25 and 41-50, identified below, are referred to as "NMS.") NMS prepared PLAINTIFFS' state and federal tax returns for tax years 2010 through 2015. NMS also represented PLAINTIFFS in an audit examination by the IRS based upon returns for tax years 2011 through 2013.

8. Defendants DOES 1-50, inclusive, are the fictitious names of those Defendants whose true names are unknown to Plaintiffs, and whose true capacities, whether as individuals, corporations, partnerships, joint ventures, and/or associations, are also unknown to Plaintiffs, and when such true names are ascertained, Plaintiffs will amend this Complaint by inserting said true names in the place of said

fictitious names. Plaintiffs are informed and believe and thereon alleges that whenever and wherever in this Complaint any Defendants are the subject of any charging allegations by Plaintiffs, said DOES are also responsible in some manner for the events and happenings and it shall be deemed that said Defendants, DOES 1-50, inclusive, and each of them, are likewise the subject of said charging allegations herein by Plaintiffs.

9. Plaintiffs are informed and believe and thereon allege that at all times herein mentioned, Defendants DOES 1-25 were the agents, servants, and employees of their co-Defendants and in doing the things hereinafter mentioned, were acting in the scope of their authority as such agents, servants, and employees with permission and consent from their co-Defendants.

10. Defendants DOES 26-50 are persons whose capacities are unknown to Plaintiffs.

**GENERAL ALLEGATIONS**

11. In or around Spring of 2010, the KINGS attended a financial seminar in San Jose, California, presented by AEGIS. During the seminar, AEGIS presented an investment strategy consisting of a leveraged forward contract called "Aegis Shield." The KINGS discussed the product in the hallway of the seminar with CHARLES. The Aegis Shield leveraged forward contract was represented as a sound investment strategy to hedge against rising interest rates. It was sold by AEGIS and CHARLES as a legitimate way to deduct large amounts from income on an individual's schedule C federal tax returns, and as a way to diversify one's portfolio.

12. In the months following the seminar, CHARLES followed up with the KINGS on a monthly, and sometimes weekly, basis in an attempt to convince the KINGS about the soundness of the AEGIS "investment strategy." CHARLES specifically represented, on multiple occasions, that the investment was good. The KINGS also had discussions with several other high-level AEGIS employees and representatives – agents acting with authority on behalf of AEGIS – during that time, all of whom represented the soundness of the investment strategy.

13. While the KINGS were still considering investment with the AEGIS plan, CHARLES assisted them in setting up an LLC, Tioga Pass LLC, so that they could place the forward contract into the pass-through company.

14. Based upon representations made by AEIGIS and CHARLES as to the soundness of the investment strategy the KINGS converted more than $825,000 of their traditional IRA to a Roth IRA, creating substantial taxable income, and then invested $145,000 in the forward contract in September or October 2010. The KINGS were assured that the additional taxable income from the IRA conversion would not negatively affect them because of losses that would be claimed based upon their investment into the leveraged forward contract.

15. In early 2011 the KINGS went to their own accountant for assistance with their taxes. However, their accountant was unfamiliar with the leveraged forward contracts and did not know how the proposed deductions could be taken without triggering an audit examination and ultimately tax deficiency and accompanying penalties and interest. Accordingly, the KINGS' accountant stated he could no longer assist the KINGS with their taxes, and suggested they find someone familiar with the leveraged forward contract plan.

16. The KINGS contacted CHARLES, worried about the legitimacy of the AEGIS investment in which they had just become involved. CHARLES assured the KINGS that the leveraged forward contract was legitimate, as were the deductions, and that it was simply a complicated tax situation with which many accountants were not familiar. CHARLES referred the KINGS to NMS, whom CHARLES advised would assist as AEGIS and NMS worked together often on the leveraged forward contracts, meaning that NMS was intimately familiar with the investment.

17. As instructed, the KINGS contacted AEGIS' and CHARLES' referred accountants NMS. NMS represented that it was familiar with the leveraged forward contract sold to the KINGS by AEGIS and agreed to prepare the KINGS' returns. At no time did NMS ever warn the KINGS of the risk of an audit based upon the massive deductions that NMS was taking, or that the IRS would be likely to deem the deductions invalid after an examination. At no time did NMS ever advise the KINGS to reverse their IRA conversion made in order to invest in the leveraged forward contracts, as a competent tax advisor would have done.

18. NMS prepared the KINGS' Federal and California tax returns for tax years 2010 to 2015.

19. In April 2014, the KINGS' 2011 through 2013 returns were selected for examination. NMS assured the KINGS that this was routine, and that NMS could and would handle the examination. Thus,

the KINGS granted NMS Power of Attorney and paid NMS for the representation.

20. NMS then handled all requests for information made by the IRS during the examination, and generally acted as a go-between for the KINGS and the IRS revenue agent. On November 12, 2015, the IRS provided a proposed assessment of owed taxes and penalties for years 2011 through 2013.

21. NMS advised the KINGS that it was nothing to worry about, and that the complicated tax situation would be resolved. NMS, on behalf of the KINGS, appealed the decision, and subsequently handled the appeal until a notice of deficiency was sent by the IRS on January 12, 2017. The KINGS and NMS have entered into a series of tolling agreements extending the statute of limitations for a claim against NMS, beginning on December 21, 2018 until September 21, 2019.

22. Pursuant to the Notice of Deficiency, the IRS determined that the KINGS had underpaid taxes, due to deductions that should not have been taken based upon the leveraged forward contracts, in the amount of $126,708.00 in 2011, $130,413.00 in 2012, and $5,149.00 in 2013. Based upon those significant underpayments, the IRS assessed penalties in the amounts of $25,341.60, $26,082.60, and $1,029.80, respectively. Until the Notice of Deficiency was issued, PLAINTIFFS did not understand that the AEGIS leveraged forward contract was in fact a scam and that they had been defrauded by AEGIS and CHARLES, with the help of co-conspirator NMS who had a duty to disclose the nature of the fraudulent scheme, yet did not do so.

23. At no point in time during NMS' handling of the audit examination did NMS advise the KINGS of the potential conflict of interest in having their tax preparers handle the audit, or of the availability of a reasonable cause argument whereby the KINGS could have argued to the IRS that they reasonably relied upon the advice of their negligent accountants. Making such an argument likely would have extinguished the penalties claimed by the IRS.

24. Following receipt of the Notice of Deficiency, the KINGS retained tax counsel at Moskowitz LLP ("Moskowitz") to handle their appeal of the Notice of Deficiency to the tax court. Moskowitz charged the KINGS a flat fee of $50,500 for their services.

25. Ultimately, with the help of mitigating tax counsel, the KINGS stipulated to a judgment in the tax court reducing the taxable income by approximately $20,000 and saved on related penalties and interest. The final tax court judgment, entered on September 13, 2018, was for $117,420, $125,605, and

$1,453 in tax deficiencies for years 2011 through 2013, respectively, with penalties in the amount of $23,484, $25,121, and $290.60, respectively.

26. Investigation into AEGIS and the leveraged forward contract has revealed that the plan was in reality a tax avoidance scheme, with the IRS deeming that "[t]here is no evidence to support that the Aegis transactions is not a substance over form transaction that lacks economic substance," and that therefore no deductions should have been allowed.

27. As a result of their investment in the AEGIS leveraged forward contract, CHARLES' misrepresentations as to the soundness of the investment, and NMS' negligent tax preparation, the KINGS has been damaged in amounts at least as follows:

   a. $145,000 for their initial investment in the fraudulent AEGIS leveraged forward contract scheme;
   b. $244,508 in Federal taxes paid as a result of the KINGS IRA conversion, which AEGIS never should have recommended for investment in the leveraged forward contract, and which would not have been incurred had NMS advised the KINGS to reverse within the time allowed by law, rather than attempting to take deductions pursuant to the leveraged forward contract scheme;
   c. $48,895.60 in Federal tax penalties which the KINGS paid on the tax deficiencies;
   d. $74,514.54 in Federal tax interest which the KINGS paid as a result of the tax deficiencies and penalties;
   e. State of California tax deficiencies, penalties, and interest in an amount to be shown at trial;
   f. $17,000 paid to NMS, including for representation during the audit proceedings, without a proper conflict waiver; and
   g. $50,500 paid to Moskowitz.

**FIRST CAUSE OF ACTION**
**Intentional Fraud**
**(Against AEGIS, CHARLES, and DOES 1-15 and DOES 26-40)**

28. Plaintiffs refers to and incorporates by this reference all of the allegations in the preceding Paragraphs.

29. AEGIS, on many occasions, represented to the KINGS that the leveraged forward contract was a sound and legitimate investment strategy.

30. CHARLES also made several representations to the KINGS that the leveraged forward contract was a sound investment.

31. The representations regarding the soundness of the leveraged forward contracts made by AEGIS and CHARLES were false. In reality, the leveraged forward contract was, as stated by the IRS, "not a substance over form transaction" which "lacks economic substance."

32. AEGIS and CHARLES knew their representations were false when they made them or made them recklessly or without regard for their truth.

33. AEGIS and CHARLES intended that the KINGS rely on their representations as to the soundness of the leveraged forward contract investment.

34. The KINGS reasonably relied upon the representations when they purchased the leveraged forward contracts, which reliance was a substantial factor in causing the KINGS harm as set forth above in an amount to be shown at trial.

35. AEGIS' and CHARLES' false representations were made with malice, oppression, or fraud, such as to entitle Plaintiffs to an award of exemplary or punitive damages.

**SECOND CAUSE OF ACTION**
**Negligent Misrepresentation**
**(Against AEGIS, CHARLES, and DOES 1-15 and DOES 26-40)**

36. Plaintiffs refers to and incorporates by this reference all of the allegations in the preceding Paragraphs.

37. AEGIS, on many occasions, represented to the KINGS that the leveraged forward contract was a sound and legitimate investment strategy.

38. CHARLES also made several representations to the KINGS that the leveraged forward contract

was a sound investment.

39. The representations regarding the soundness of the leveraged forward contracts made by AEGIS and CHARLES were false. In reality, the leveraged forward contract was, as stated by the IRS, "not a substance over form transaction" which "lacks economic substance."

40. AEGIS and CHARLES had no reasonable grounds to believe their representations were true when they made them.

41. AEGIS and CHARLES intended that the KINGS rely on their representations as to the soundness of the leveraged forward contract investment.

42. The KINGS reasonably relied upon the representations when they purchased the leveraged forward contracts, which reliance was a substantial factor in causing the KINGS harm as set forth above in an amount to be shown at trial.

**THIRD CAUSE OF ACTION**
**Professional Negligence**
**(Against NMS and DOES 16-25 and DOES 41-50)**

43. Plaintiffs refers to and incorporates by this reference all of the allegations in Paragraphs

44. Plaintiffs retained NMS in or around early 2011, and through 2016, to prepare their taxes and later to represent them in response to an IRS audit examination.

45. As an accountancy firm, NMS had a duty to exercise reasonable care in preparing the KINGS' tax returns, including specifically in advising regarding the legitimacy of the deductions taken based upon the AEGIS leveraged forward contract, that there was a high chance for an audit and assessment of penalties and interest, and that the KINGS could reverse their IRA to Roth IRA conversion. A reasonably competent accountancy firm in NMS' position would have realized that the AEGIS leveraged forward contract had no economic substance and that any deductions were improper and likely to be addressed on audit.

46. NMS further had a duty to advise the KINGS regarding options once the IRS examined the KINGS' 2011 through 2013 tax returns, including regarding the conflict of interests in representing the KINGS in the audit and the ability to argue tax preparer negligence in an attempt to waive the penalties assessed by the IRS.

47. NMS further had a duty to act within the applicable standard of care as set forth by the AICPA and Circular 230.

48. NMS breached the duty of care owed to the KINGS in that NMS never did anything to warn the KINGS of the risk associated with taking massive deductions based upon the leveraged forward contract, nor did NMS ever advise the KINGS about the inherent conflict in their representation of the KINGS in the audit proceedings or regarding the availability of a reasonable cause argument to waive the penalties.

49. As a result of NMS' breaches of the standard of care, the KINGS have been harmed as set forth above, in an amount to be proven at trial.

**FOURTH CAUSE OF ACTION**
**Breach of Fiduciary Duty**
**(Against NMS and DOES 16-25 and DOES 41-50)**

50. Plaintiffs refers to and incorporates by this reference all of the allegations in the preceding Paragraphs.

51. As the KINGS' accountant for both preparation of tax returns and representation in response to the IRS audit, NMS owed the KING a fiduciary duty, including those duties set forth by the AICPA and Circular 230.

52. As set forth above, NMS breached that duty owed to the KINGS, including failing to properly advise the KINGS regarding the validity of the deductions taken, other options the KINGS had to reverse their IRA to Roth IRA conversion, and failure to advise regarding the conflict of representation of the KINGS' in the audit proceedings or to make a reasonable cause argument to the IRS.

53. Moreover, NMS knew or should have known that the AEGIS forward leveraged contract was a tax avoidance scheme that likely would be deemed invalid by the IRS since it lacked economic substance. NMS failed to advise or warn the KINGS of the same.

54. On information and belief, the KINGS allege that the reason that NMS failed to advise them of the invalidity of the AEGIS leveraged forward contract is because AEGIS and NMS were joint participants in the scheme, in that AEGIS agreed to refer investors to NMS for tax preparation work.

55. The KINGS have been damaged by NMS' breaches of fiduciary duty as set forth above, in an amount to be proven at trial.

56. NMS' breaches of fiduciary duty were made with malice, oppression, or fraud, such as to entitle Plaintiffs to an award of exemplary or punitive damages.

**FIFTH CAUSE OF ACTION**
**Concealment**
**(Against NMS and DOES 16-25 and DOES 41-50)**

57. Plaintiffs refers to and incorporates by this reference all of the allegations in the preceding Paragraphs.

58. NMS, as the KINGS' accountant and fiduciary, had a fiduciary duty to advise the KINGS that the leveraged forward contract "investment" with AEGIS was "not a substance over form transaction" which "lack[ed] economic substance" and that the deductions taken were therefore invalid and likely to result in an audit and deficiency, with penalties and interest. NMS further owed the KINGS a duty to advise that, based upon the invalidity of the leveraged forward contract, the KINGS should reverse their IRA to Roth IRA conversion in order to avoid substantial and adverse tax consequences.

59. Despite the duty to disclose, NMS intentionally failed to disclose these facts.

60. The KINGS did not know that the AEGIS leveraged forward contract "investment" was a form over substance transaction lacking economic substance, that their deductions were therefore invalid and likely to result in an audit, or that they could reverse their IRA to Roth IRA conversion to avoid adverse tax consequences.

61. NMS intended to deceive the KINGS by concealing these facts.

62. Had NMS not concealed this information, the KINGS would have acted differently. Specifically, the KINGS would not have claimed the invalid deductions and would have reversed their IRA to Roth IRA conversion, saving hundreds of thousands of dollars in adverse tax consequences and underpayment penalties and interest. The KINGS also would have obtained a refund in their investment with AEGIS.

63. NMS' concealment was a substantial factor in causing the KINGS harm as set forth above in an amount to be shown at trial.

64. NMS' breaches of fiduciary duty were made with malice, oppression, or fraud, such as to entitle Plaintiffs to an award of exemplary or punitive damages.

### SIXTH CAUSE OF ACTION
**Conspiracy to Commit Fraud**
**(Against AEGIS, CHARLES, NMS, and DOES 1-50)**

65. Plaintiffs refers to and incorporates by this reference all of the allegations in the preceding Paragraphs.

66. On information and belief, AEGIS, CHARLES, and NMS acted together in a conspiracy to get investors, including the KINGS, to invest in the forward leveraged contracts sold by AEGIS. When investors such as the KINGS were unable to secure an accountant to prepare their taxes because of the impropriety of the deductions the plan required, AEGIS and CHARLES would and did recommend NMS.

67. On information and belief, AEGIS, CHARLES, and NMS were each aware of the others' role in the conspiracy, and the plan to defraud investors into purchasing leveraged forward contracts in the Aegis Shield program.

68. On information and belief, AEGIS, CHARLES, and NMS each intended that the fraud on investors be committed.

69. On information and belief, AEGIS, CHARLES, and NMS were each an active participant in the conspiracy to defraud investors, including the KINGS.

70. As a result of the actions of the conspirators, and each of them, the KINGS have been harmed in an amount to be proven at trial.

71. The conspirators, including AEGIS, CHARLES, and NMS, performed acts in accordance with the conspiracy with malice, oppression, or fraud, such as to entitle Plaintiffs to an award of exemplary or punitive damages.

### SEVENTH CAUSE OF ACTION
**Financial Elder Abuse – Welfare & Institutions Code § 15610.30**
**(By GORDON KING Against AEGIS, CHARLES, NMS, and DOES 1-50)**

72. Plaintiff GORDON KING refers to and incorporates by this reference all of the allegations in the preceding Paragraphs.

73. At all relevant times, Plaintiff GORDON KING was over the age of 65.

74. In doing the conduct alleged above, including but not limited to all Defendants' misrepresentations or concealment regarding the soundness of the leveraged forward contract "investment," NMS' failure to disclose the impropriety of the deductions claimed on the KINGS' 2011 through 2013 tax returns, and NMS' various failures to adhere to the standard of care, fiduciary standards, and standards set forth by the AICPA and Circular 230, Defendants, and each of them, took GORDON KINGS' property, or assisted in taking his property with the intent to defraud GORDON KING.

75. Defendants' conduct described above was a substantial factor in causing GORDON KING'S harm, as set forth above in an amount to be proven at trial.

76. Defendants conduct was done with malice, oppression, or fraud, such as to entitle Plaintiffs to an award of exemplary or punitive damages.

77. Plaintiffs are further entitled to an award of attorneys' fees, pursuant to Welfare and Institutions Code section 15657.5.

### EIGHTH CAUSE OF ACTION
**Violations of Unfair Competition Law – Business & Professions Code §§ 17200 *et seq.*
(Against AEGIS, CHARLES, NMS, and DOES 1-50)**

78. Plaintiffs refers to and incorporates by this reference all of the allegations in the preceding Paragraphs.

79. Business and Professions Code section 17200 states, in pertinent part: "unfair competition shall mean and include any unlawful, unfair or fraudulent business act or practice."

80. Defendants violated Business and Professions Code section 17200 *et seq.* by fraudulently misrepresenting the soundness of the leveraged forward contract "investment" sold by AEGIS and failing to properly advise Plaintiffs that the leveraged forward contract in fact was form over substance and lacked economic benefit.

81. The acts described above are unlawful within the meaning of the unfair competition law because they constitute a violation of California Civil Code sections 1709 and 1710, a violation of the AICPA and Circular 230 standards, a violation of the Consumer Legal Remedies Act, Civil Code section 1750 *et seq.*, a violation of the Elder Abuse and Dependent Adult Civil Protections Act, Welfare and

Institutions Code section 15610.30, and other California state laws as set forth in this Complaint.

82. The acts described above are fraudulent within the meaning of the unfair competition law because members of the public are likely to be deceived and believe that the investment and subsequent deductions are proper based upon representations by Defendants as to the soundness of the leveraged forward contract strategy.

83. As a direct and proximate result of Defendants' unlawful and fraudulent acts, the KINGS suffered harm and losses as described herein and in amounts to be proved at trial. The KINGS therefore seek restitution from Defendants.

84. Defendants conduct was done with malice, oppression, or fraud, such as to entitle Plaintiffs to an award of exemplary or punitive damages.

85. Because GORDON KING was over the age of 65 at all times relevant to this Complaint, he is entitled to an award of treble damages for the violations set forth above, pursuant to Civil Code section 3345.

## NINTH CAUSE OF ACTION
### Violations of Consumer Legal Remedies Act – Civil Code §§ 1750 et seq.
### (Against AEGIS, NMS, and DOES 1-50)

86. Plaintiffs refers to and incorporates by this reference all of the allegations in the preceding Paragraphs.

87. The KINGS acquired by purchase, a leveraged forward contract from AEGIS for investment purposes and accounting services from NMS.

88. AEGIS, CHARLES, and NMS represented that the leveraged forward contract was a sound and appropriate investment strategy and that deductions were properly taken based upon losses from the leveraged forward contract.

89. In reality, the leveraged forward contract was a form over substance transaction that lacked economic benefit. As such, it was a worthless investment.

90. As a direct and proximate result of the KINGS reliance on Defendants' false representations, they have been harmed in an amount to be proven at trial. The KINGS therefore seek restitution from Defendants.

91. Defendants conduct was done with malice, oppression, or fraud, such as to entitle Plaintiffs to an award of exemplary or punitive damages.

92. Because GORDON KING was over the age of 65 at all times relevant to this Complaint, he is entitled to an award of treble damages for the violations set forth above, pursuant to Civil Code section 3345 as well as a statutory award of $5,000 pursuant to Civil Code section 1780(b).

93. Plaintiffs are further entitled to an award of attorneys' fees, pursuant to Civil Code section 1780(e).

## TENTH CAUSE OF ACTION
**Violations of Penal Code § 496**
**(Against AEGIS, CHARLES, NMS, and DOES 1-50)**

94. Plaintiffs refers to and incorporates by this reference all of the allegations in the preceding Paragraphs.

95. The false and fraudulent conduct alleged above by Defendants constitutes obtaining property (in this case monies), or aiding in obtaining property, in a manner constituting "theft" within the purpose and meaning of Section 496 of the California Penal Code, among other things by reason obtaining, using, and/or keeping monies by means of fraud, a false artifice, and/or false pretenses, to the exclusion and damage of Plaintiffs herein.

96. Section 496(c) of the Penal Code provides that "any person who has been injured by a violation of subdivision (a) or (b) [of Section 496] may bring an action for three times the amount of actual damages, if any, sustained by the Plaintiff, costs of suit, and reasonable attorney's fees."

97. Accordingly, in addition to Plaintiffs' actual damages resulting from the conduct of Defendants within the purpose and meaning of Penal Code Section 496, Plaintiffs request and are entitled by law to recover from said Defendants treble the actual amount of damages so awarded, as well as Plaintiffs' costs and reasonable attorneys' fees herein, all in amounts according to proof.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs pray for judgment as follows:

1. For compensatory damages according to proof;
2. For punitive damages;
3. For attorneys' fees as allowed by statute;

4. For treble damages as allowed by statute;

5. For statutory penalties as allowed by statute;

6. For restitution as allowed by statute;

7. For costs of suit incurred herein;

8. For prejudgment interest; and

9. For such other and further relief as the Court deems proper.

DATED: September 20, 2019

KOSS FIRM APC

By _____/s Adam M. Koss _____
Adam M. Koss
Attorney for Plaintiffs GORDON KING AND
DONNA RAE KING