UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| GORDON KING, et al., | No. 2:19-cv-01916-JAM-CKD |
| Plaintiff, | |
| v. | ORDER AND FINDINGS AND RECOMMENDATIONS |
| PORTFOLIO PRESERVATION, LLC, NMS, INC., et. al., | |
| Defendants. | |

Presently pending before the court is plaintiff Donna Rae King's motion for default judgment against defendant Kingsley Charles. (ECF No. 23.) Defendant has failed to file an opposition to the motion for default judgment in accordance with Local Rule 230(c). This motion came on regularly for hearing on February 17, 2021. (ECF No. 24.) Counsel for plaintiff, Adam Koss, appeared via Zoom on behalf of plaintiff. Defendant did not appear. Upon review of the documents in support, upon hearing the arguments of counsel, and good cause appearing therefor, THE COURT FINDS AS FOLLOWS:

**I.    BACKGROUND**

Plaintiff Donna Rae King, and now deceased Gordon King,[1] initiated this action on

---

[1] Plaintiff filed the complaint with her husband, Gordon King. On October 5, 2020, plaintiff filed a statement of death of her husband, and requested the court allow her to amend the complaint to

1

September 20, 2019, alleging violations of intentional fraud; negligent misrepresentation; professional negligence; breach of fiduciary duty; concealment; conspiracy to commit fraud; financial elder abuse; California's Unfair Competition Law, Business and Professions Code §§ 17200 et seq; the Consumer Legal Remedies Act, Cal. Civ. Code §§ 1750 et seq; and Penal Code § 496.  (ECF No. 1.)

Plaintiff alleges that in 2010 defendant Charles preyed upon her by selling plaintiff and her husband a fraudulent tax scheme under the guise of an "investment strategy" that was based upon taking large deductions as an operating loss on tax returns.  (ECF No. 1 ¶ 1.)  Plaintiff claims that once the investment was purchased, she was directed to an accounting firm who, knowing that the deductions were inappropriate and likely to result in an audit, prepared the returns and represented her through audit proceedings.  (Id.)  Plaintiff states she and her husband lost their initial investment and suffered tax penalties and underpayment penalties and interest.  (Id.)

Defendant Charles allegedly sold the scheme to plaintiff and followed up with plaintiff on a monthly, and sometimes weekly, basis to convince plaintiff to continue with her and her husband's investment.  (Id. ¶¶ 11-12.)  Charles assisted plaintiff with setting up an LLC, Tiogo Pass LLC, so plaintiff could place the forward contract into the pass-through company.  (Id. ¶ 13.) Based on Charles' representations, plaintiff claims to have converted more than $825,0000 of their traditional IRA to a Roth IRA creating substantial taxable income, and then invested $145,000 in the forward contract in September or October 2010.  (Id. ¶ 14.)  Plaintiff claims she and her husband were assured that the additional taxable income would not negatively affect them because of losses that would be claimed based upon their investment into the leveraged forward contract.  (Id.)

Plaintiff alleges that her own accountant was unable to assist with her taxes and did not know how to take the proposed deductions without triggering an audit examination and ultimately tax deficiency and penalties and interest.  (Id. ¶ 15.)  Plaintiff states that Charles assured plaintiff

---

substitute herself as the successor in interest.  (ECF Nos. 19, 20.)  Plaintiff's request was granted.

that the situation was fine, and referred plaintiff and her husband to defendant NMS, stating that defendant Aegis and defendant NMS worked together, and they would be familiar with this type of investment and tax situation. (Id. ¶ 16.) Plaintiffs thereby retained NMS to prepare their Federal and California tax returns from 2010 to 2015. (Id. ¶ 18.)

In April 2014, plaintiff's 2011 through 2013 returns were selected for examination, and NMS assured plaintiff that this was routine and that they would handle the examination. (Id. ¶ 19.) On November 12, 2015, the IRS provided a proposed assessment of owed taxes and penalties for years 2011 through 2013. (Id. ¶ 20.) NMS advised plaintiff that she shouldn't be concerned, and they would resolve the situation. (Id. ¶ 21.) NMS appealed the decision and allegedly handled the appeal until the IRS sent plaintiff a notice of deficiency on January 12, 2017. (Id.)

The IRS determined plaintiff and her husband underpaid taxes due to deductions that should not have been taken based upon the leveraged forward contracts in the amount of $126,708.00 in 2011, $130,413.00 in 2012, and $5,149.00 in 2013. (Id. ¶ 22.) The IRS assessed penalties in the amounts of $25,341.60, $26,082.60, and $1,029.80, respectively. (Id.) Plaintiff retained tax counsel for a fee of $50,500, who were able to appeal the Notice of Deficiency to the tax court, and were able to mitigate penalties and interest in the final tax court judgment to $117,420, $125,605, and $1,453 for years 2011 through 2013, respectively, with penalties of $23,484, $25,121, and $290.60, respectively. (Id. ¶¶ 24, 25.)

Plaintiff alleges that as a result of defendants' conduct, including defendant Charles' misrepresentation, plaintiff and her husband were damaged in the amount of:

    a. $145,000 for their initial investment into the leveraged forward contract scheme;

    b. $244,508 in Federal taxes paid as a result of the IRA conversion;

    c. $48,895.60 in Federal tax penalties which plaintiffs paid on the tax deficiencies;

    d. $74,514.54 in Federal tax interest which plaintiffs paid as a result of the tax deficiencies and penalties;

    e. State of California tax deficiencies, penalties, and interest;

    f. $17,000 paid to NMS, including for representation during the audit proceedings;

and

g. $50,500 to plaintiffs' retained tax counsel.

(Id. ¶ 27.)

Defendant Charles was served on October 11, 2019. (ECF No. 5.) Charles has failed to appear or respond to the complaint. As such, plaintiff moved for an entry of default. (ECF No. 13.) Accordingly, the Clerk of the Court entered default as to defendant Charles on May 13, 2020. (ECF No. 14.) Defendant Charles has still not answered or appeared. Thereafter, plaintiff brought the pending motion for default judgment against Charles, through which she seeks judgment on account of the claims pleaded in the sum of $2,184,036.09, plus punitive damages. (ECF No. 23 ¶¶ 3, 4.)

## II.   LEGAL STANDARDS

Pursuant to Federal Rule of Civil Procedure 55, default may be entered against a party against whom a judgment for affirmative relief is sought who fails to plead or otherwise defend against the action. See Fed. R. Civ. P. 55(a). However, "[a] defendant's default does not automatically entitle the plaintiff to a court-ordered judgment." PepsiCo, Inc. v. Cal. Sec. Cans, 238 F. Supp. 2d 1172, 1174 (C.D. Cal. 2002) (citing Draper v. Coombs, 792 F.2d 915, 924-25 (9th Cir. 1986)). Instead, the decision to grant or deny an application for default judgment lies within the district court's sound discretion. Aldabe v. Aldabe, 616 F.2d 1089, 1092 (9th Cir. 1980). In making this determination, the court considers the following factors:

> (1) the possibility of prejudice to the plaintiff, (2) the merits of plaintiff's substantive claim, (3) the sufficiency of the complaint, (4) the sum of money at stake in the action[,] (5) the possibility of a dispute concerning material facts[,] (6) whether the default was due to excusable neglect, and (7) the strong policy underlying the Federal Rules of Civil Procedure favoring decisions on the merits.

Eitel v. McCool, 782 F.2d 1470, 1471-72 (9th Cir. 1986). Default judgments are ordinarily disfavored. Id. at 1472.

As a general rule, once default is entered, well-pleaded factual allegations in the operative complaint are taken as true, except for those allegations relating to damages. TeleVideo Sys., Inc. v. Heidenthal, 826 F.2d 915, 917-18 (9th Cir. 1987) (per curiam) (citing Geddes v. United Fin.

4

1  Group, 559 F.2d 557, 560 (9th Cir. 1977) (per curiam)); accord Fair Housing of Marin v. Combs,
2  285 F.3d 899, 906 (9th Cir. 2002).  In addition, although well-pleaded allegations in the
3  complaint are admitted by a defendant's failure to respond, "necessary facts not contained in the
4  pleadings, and claims which are legally insufficient, are not established by default."  Cripps v.
5  Life Ins. Co. of N. Am., 980 F.2d 1261, 1267 (9th Cir. 1992) (citing Danning v. Lavine, 572 F.2d
6  1386, 1388 (9th Cir. 1978)); accord DIRECTV, Inc. v. Hoa Huynh, 503 F.3d 847, 854 (9th Cir.
7  2007) (stating that a defendant does not admit facts that are not well-pled or conclusions of law);
8  Abney v. Alameida, 334 F. Supp. 2d 1221, 1235 (S.D. Cal. 2004) ("[A] default judgment may not
9  be entered on a legally insufficient claim").  A party's default does not establish the amount of
10 damages.  Geddes, 559 F.2d at 560.

**III.     DISCUSSION**

    A.  <u>Appropriateness of the Entry of Default Judgment Under the Eitel Factors</u>

        1.  *Factor One: Possibility of Prejudice to Plaintiff*

The first Eitel factor considers whether the plaintiff would suffer prejudice if default judgment is not entered, and such potential prejudice to the plaintiff militates in favor of granting a default judgment.  See PepsiCo, Inc., 238 F. Supp. 2d at 1177.  Here, plaintiff would potentially face prejudice if the court did not enter a default judgment.  Absent entry of a default judgment, plaintiff would be without another recourse against defendant Charles.  Accordingly, the first Eitel factor favors the entry of a default judgment.

        2.  *Factors Two and Three: The Merits of Plaintiff's Substantive Claims and the Sufficiency of the Complaint*

The court considers the merits of plaintiff's substantive claims and the sufficiency of the complaint together below because of the relatedness of the two inquiries.  The court must consider whether the allegations in the complaint are sufficient to state a claim that supports the relief sought.  See Danning, 572 F.2d at 1388; PepsiCo, Inc., 238 F. Supp. 2d at 1175.

        a.  Intentional Fraud and Negligent Misrepresentation

Under California law, the elements of intentional misrepresentation are: "(1) misrepresentation (false representation, concealment, or nondisclosure); (2) knowledge of falsity

5

1  (scienter); (3) intent to defraud; (4) justifiable reliance; and (5) resulting damages." Dougherty v.
2  Bank of Am., N.A., 177 F. Supp. 3d 1230, 1245 (E.D. Cal. 2016); Charnay v. Cobert, 145 Cal.
3  App. 4th 170, 184 (2006).  Negligent misrepresentation requires: (1) a misrepresentation of a past
4  or existing material fact; (2) without reasonable grounds for believing it to be true; (3) with intent
5  to induce another's reliance on the fact misrepresented; (4) justifiable reliance thereon by the
6  party to whom the misrepresentation was directed; and (5) damages.  Takano v. Procter &
7  Gamble Co., No. 2:17-CV-00385-TLN-AC, 2018 WL 5304817, at *12 (E.D. Cal. Oct. 24, 2018)
8  (citing Fox v. Pollack, 181 Cal. App. 3d 954, 962 (1986)).

9     Plaintiff alleges that "Charles . . . made several representations to [plaintiff] that the
10 leveraged forward contract was a sound investment."  (ECF No. 1 ¶ 30.)  Plaintiff states that
11 Charles "knew [his] representations were false when he made them or made them recklessly or
12 without regard for their truth."  (Id. ¶ 32.)  Plaintiff alleges Charles' statements were "made with
13 malice" and plaintiff "reasonably relied on [his] representations."  (Id. ¶¶ 33-35.)

14    Plaintiff's allegations are taken as true following an entry of default, and accordingly, the
15 court concludes that she has met her burden in alleging a claim for intentional fraud as well as
16 negligent misrepresentations.

17         b.  Conspiracy to Commit Fraud

18    In order to state a claim for civil conspiracy, a plaintiff must allege: (1) the formation and
19 operation of the conspiracy and (2) damage to the plaintiff from an act or acts in furtherance of
20 the common design.  Applied Equip. Corp. v. Litton Saudi Arabia Ltd., 7 Cal. 4th 503, 511
21 (1994) (citing Doctors' Co. v. Sup. Ct., 49 Cal. 3d 39, 44 (1989)).  To state a claim for conspiracy
22 to commit fraud, plaintiff must adequately plead its underlying fraud claim.  Tatung Co., Ltd. v.
23 Hsu, No. SA CV 13-1743-DOC ANX, 2015 WL 11072178, at *26 (C.D. Cal. Apr. 23, 2015)
24 (citing Oregon Laborers-Employers Health & Welfare Trust Fund v. Philip Morris Inc., 185 F.3d
25 957, 969 (9th Cir. 1999)).

26    Plaintiff alleges that all defendants acted together in conspiracy to induce plaintiff to
27 invest in the forward leveraged contracts, and that once plaintiff required accounting services due
28 to the impropriety of deductions, Aegis and Charles would recommend NMS.  (ECF No. 1 ¶ 66.)

1    Plaintiff alleges that all defendants were aware of the others' roles in the conspiracy as well as the
2    plan to defraud investors.  (Id. ¶ 67.)  Plaintiff alleges harm due to the alleged conspiracy.
3         As previously addressed, plaintiff met the burden of pleading the underlying fraud claim.
4    Plaintiff has sufficiently pled a factual basis for a cause of action for conspiracy to commit fraud.

5                    c.      Financial Elder Abuse

6         To allege financial elder abuse, plaintiff must plead that Charles "took, obtained, or
7    retained (or assisted in taking, obtaining, or retaining) [p]laintiff's property for wrongful use, or
8    with the intent to defraud, or by undue influence.  Wrongful use can be shown where an elder has
9    a contractual right to property, defendant breaches that contract, and defendant 'actually knows
10   that it is engaging in a harmful breach, or reasonably should be aware of the harmful breach.'"
11   Yokell v. Draper, No. 18-CV-02124-JSC, 2018 WL 3417514, at *9 (N.D. Cal. July 13, 2018)
12   (quoting Paslay v. State Farm General Ins. Co., 248 Cal. App. 4th 639, 658 (Ct. App. 2016)).
13        Plaintiff alleges that Gordon King was over 65 at the time the incidents occurred.  (ECF
14   No. 1 ¶ 73.)  Plaintiff alleges that Charles wrongfully took or assisted in taking Gordon King's
15   property with the intent to defraud him.  This, plaintiff stated, was the cause of plaintiff's harm.
16   The court concludes, that taking plaintiff's allegations as true, plaintiff's allegations are sufficient
17   to state a claim for financial elder abuse.

18                   d.      Violations of California Unfair Competition Laws, Bus. & Prof.
19                           Code §§ 17200 et seq

20        A claim under the California Unfair Competition Laws, Bus. & Prof. Code §§ 17200 et
21   seq ("UCL") must rest on a violation of some independent substantive statute, regulation or case
22   law.  See Farmers Ins. Exch. v. Superior Court, 2 Cal. 4th 377, 383 (1992) (action under section
23   17200 borrows violations of other laws); see also Daro v. Superior Court, 151 Cal. App. 4th
24   1079, 1092-93 (2007); Saunders v. Superior Court, 27 Cal. App. 4th 832, 838 (1994) (violation
25   under "unlawful" prong of UCL requires underlying violation of law); Drum v. San Fernando
26   Valley Bar Ass'n, 182 Cal. App. 4th 247, 256 (2010) (claim under "unfair" prong requires
27   showing that defendant engaged in practice that violated specific constitutional, statutory, or
28   regulatory provision or that utility of alleged business practice outweighed by harm to

7

consumers); Hall v. Time Inc., 158 Cal. App. 4th 847, 855 (2008) (claim under "fraudulent" prong of UCL requires showing of reliance on alleged misrepresentation).

Plaintiff alleged Charles violated the UCL by fraudulently misrepresenting the soundness of the leveraged forward contract investment and failing to advise plaintiffs of the scheme. (ECF No. 1 ¶¶ 79-80.) Plaintiff further states that "[t]he acts described . . . are unlawful within the meaning of the unfair competition law because they constitute a violation of California Civil Code sections 1709 and 1710, a violation of the AICPA and Circular 230 standards, a violation of the Consumer Legal Remedies Act, Civil Code section 1750 et seq., a violation of the Elder Abuse and Dependent Adult Civil Protections Act, Welfare and Institutions Code section 15610.30, and other California state laws as set forth in this Complaint." (Id.)

At minimum, plaintiff has alleged that she relied on Charles' misrepresentations to "invest" in Aegis' scheme. Plaintiff's allegations, taken as true, are sufficient to state a claim for a violation of the UCL.

    e.  Violations of California Consumer Legal Remedies Act, Civ. Code §§ 1750 et seq

A plaintiff may bring a claim under the CLRA so long as she "suffer[ed] any damage as a result of" a proscribed practice under the CLRA. Cal. Civ. Code § 1780(a). This means that to adequately plead a CLRA claim, a plaintiff must allege that she relied on the defendant's alleged misrepresentation and that she suffered economic injury as a result. Doe v. SuccessfulMatch.com, 70 F. Supp. 3d 1066, 1075 (N.D. Cal. 2014) (citing Durell v. Sharp Healthcare, 183 Cal.App.4th 1350, 108 Cal.Rptr.3d 682, 697 (2010)).

Plaintiff has alleged that she relied on Charles' misrepresentations to "invest" in Aegis' scheme. Plaintiff's allegations, taken as true, are sufficient to state a claim for a violation of the CLRA.

    f.  Violations of California Penal Code § 496

Cal. Penal Code § 496(c) permits victims of crimes defined in § 496(a) to initiate a civil lawsuit to recover treble the amount of actual damages, costs, and reasonable attorneys' fees.

////

Allure Labs, Inc. v. Markushevska, 606 B.R. 51, 57 (N.D. Cal. 2019).[2]

Plaintiff argues Charles obtained his property by "theft" within the meaning of Section 496. (ECF No. 1 ¶ 95.) "California Penal Code section 496(a) uses the term 'theft' without including a definition, thereby incorporating California's general theft definition set forth in California Penal Code section 484(a)." United States v. Flores, 901 F.3d 1150, 1157 (9th Cir. 2018) (citing Carrillo-Jaime v. Holder, 572 F.3d 747, 751 (9th Cir. 2009)). Section 484(a) sets forth that any individual who "fraudulently appropriate(s) property which has been entrusted to him or her, or who shall knowingly and designedly, by any false or fraudulent representation or pretense, defraud any other person of money . . . [or] property . . . is guilty of theft."

Because plaintiff alleges Charles knowingly received, concealed, and withheld their property, which had been obtained by means of false or fraudulent representations or pretense, the court finds plaintiff has sufficiently alleged a claim under Section 496.

### 3. *Factor Four: The Sum of Money at Stake in the Action*

Under the fourth factor cited in Eitel, "the court must consider the amount of money at stake in relation to the seriousness of Defendant's conduct." PepsiCo, Inc., 238 F. Supp. 2d at 1176-77; see also Philip Morris USA, Inc. v. Castworld Prods., Inc., 219 F.R.D. 494, 500 (C.D. Cal. 2003). In this case, plaintiff seeks a total of $2,184,036.09 in damages. (ECF No. 23 at 2.) Plaintiff requests the $705,558.35 in actual damages, trebled pursuant to Cal. Civ. Code § 3345; $5,000 in statutory damages pursuant to Cal. Civ. Code § 1780(b); and $11,063.06 in attorneys' fees pursuant to Cal. Welfare and Institutions Code § 15657.5 and Cal. Penal Code § 496. (ECF No. 23-1 ¶ 5.)

Although the court more closely scrutinizes the requested statutory damages, attorneys' fees, and costs below, the court does not find the overall sum of money at stake to be so large or excessive as to militate against the entry of default judgment. While the amount at stake here is

---

[2] "[A] criminal conviction is not a prerequisite" to bring a claim under Section 496. Worldwide Travel, Inc. v. Travelmate US, Inc., No. 14-CV-00155-BAS(DHB), 2016 WL 1241026, at *7 (S.D. Cal. Mar. 30, 2016). "[T]he few California courts that have addressed the statute in the civil context, have . . . permitted civil suits under Section 496 against a defendant who allegedly stole the property at issue." Id.

9

substantial, plaintiff has provided detailed and unrebutted documentation in support of her motion (see ECF No. 23-1 at 22-43), and it is well settled that a defendant "should not be allowed to evade judgment as a result of failing to appear," Emerging Acquisitions, LLC v. Oracle Installations & Fabricators, LLC, No. 6:20-CV-00453-MK, 2021 WL 325711, at *2 (D. Or. Feb. 1, 2021) (quoting United States v. Kelton, No. 1:15-cv-197-AA, 2015 WL 9809799, at *2 (D. Or. Dec. 19, 2015) ("The amount of damages at issue is substantial, so this Eitel factor slightly favors the [defendants]. But the [plaintiff] has submitted a declaration and supporting exhibits verifying the assessments due from the [defendants].").

Under these circumstances, the court concludes that this factor favors the entry of a default judgment.

4.  *Factor Five: The Possibility of a Dispute Concerning Material Facts*

The facts of this case are relatively straightforward, and the court may assume the truth of well-pleaded facts in the complaint (except as to damages) following the clerk's entry of default. Thus, there is no likelihood that any genuine issue of material fact exists. See, e.g., Elektra Entm't Group Inc. v. Crawford, 226 F.R.D. 388, 393 (C.D. Cal. 2005) ("Because all allegations in a well-pleaded complaint are taken as true after the court clerk enters default judgment, there is no likelihood that any genuine issue of material fact exists"); accord Philip Morris USA, Inc., 219 F.R.D. at 500; PepsiCo, Inc., 238 F. Supp. 2d at 1177.  As such, the court concludes that the fifth Eitel factor favors a default judgment.

5.  *Factor Six: Whether the Default Was Due to Excusable Neglect*

In this case, there is no indication in the record that defendant's default was due to excusable neglect.  Despite having been properly served in this matter, Charles has failed to appear in the action.  Charles executed a return summons and was allegedly served with NMS's motion to determine good faith settlement.  (See ECF No. 12.)  Thus, the record suggests that defendant has chosen not to defend himself in this action, and that the default did not result from excusable neglect.  Accordingly, this Eitel factor favors the entry of a default judgment.

////

////

      6.    *Factor Seven: The Strong Policy Underlying the Federal Rules of Civil Procedure Favoring Decisions on the Merits*

"Cases should be decided upon their merits whenever reasonably possible." Eitel, 782 F.2d at 1472. However, district courts have concluded with regularity that this policy, standing alone, is not dispositive, especially where a defendant fails to appear or defend itself in an action. PepsiCo, Inc., 238 F. Supp. 2d at 1177; see also Craigslist, Inc. v. Naturemarket, Inc., 694 F. Supp. 2d 1039, 1061 (N.D. Cal. 2010). Accordingly, although the court is cognizant of the policy in favor of decisions on the merits—and consistent with existing policy would prefer that this case be resolved on the merits—that policy does not, by itself, preclude the entry of default judgment.

In sum, upon consideration of all the Eitel factors, the court concludes that plaintiff is entitled to a default judgment against defendant and recommends that such a default judgment be entered. All that remains is a determination of the specific relief to which plaintiff is entitled.

    B.    Terms of the Judgment to Be Entered

After determining that a party is entitled to entry of default judgment, the court must determine the terms of the judgment to be entered. See Craigslist, Inc., 694 F. Supp. 2d at 1061.

In her motion for default judgment, plaintiff prays for the following relief:

1. $2,132,738.10 including:
   a. $705,558.35 in actual damages, trebled pursuant to Cal. Civ. Code § 3345. This amount includes:
      i. $145,000 plaintiff paid to invest in the Aegis leveraged forward contract;
      ii. $244,508 plaintiff paid in Federal taxes as a result of Charles' conduct;
      iii. $48,895.60, plaintiff paid in Federal tax penalties;
      iv. $74,514.54 plaintiff paid in Federal tax interest;
      v. $16,971.54 plaintiff paid to dismissed defendant NMS, Inc for CPA representation during IRS audit proceedings which proceeded as a result of Charles' conduct;

          vi.   $50,500 plaintiff paid to Moskowitz LLP as tax counsel paid in attempt to mitigate harm caused by Charles' conduct;

         vii.   $70,914 plaintiff paid in California taxes;

        viii.   An estimated $17,728.50 in California tax penalties; and

          ix.   An estimated $36,526.17 in California tax interest.

    b.   Statutory damages of $5,000 pursuant to Cal. Civ. Code § 1780(b); and

    c.   Attorneys' fees in the amount of $11,063.05, pursuant to Cal. Welf. $ Inst. Code § 15657.7 and Cal. Penal Code § 496.

(ECF No. 23-1 at 2-3.)

        Plaintiff's request for actual damages is supported by the evidence plaintiff provided in her motion for default.  (See ECF No. 23.)  Further, the court finds that treble damages pursuant to Cal. Civ. Code § 3345 are appropriate.[3]  Moreover, pursuant to Cal. Penal Code § 496, plaintiff is entitled to reasonable attorneys' fees.  Here, plaintiffs' counsel submitted a declaration in support of the award of attorneys' fees that provides his billing rates, the hours spent on this matter, and that he is "certified by the California State Bar Board of Legal Specialization in Legal Malpractice Law."  (ECF No. 23-2 ¶¶ 3-5.)  The court finds the amount claimed, $11,063.05, is reasonable with respect to the hourly rate and the number of hours expended on this litigation.

        The court decline's plaintiff's request for punitive damages.  (See Id. 23-1 ¶ 6.)  In order to determine whether punitive damages should be awarded, the court considers: (1) the nature of defendant's acts; (2) the amount of compensatory damages awarded; and (3) the wealth of the defendant.  Prof'l Seminar Consultants, Inc. v. Sino Am. Tech. Exch. Council, Inc., 727 F.2d 1470, 1473 (9th Cir. 1984).  The court "cannot make a fully informed determination of whether an award of punitive damages is excessive unless the record contains evidence of a defendant's financial condition."  Shanghai Automation Instrument Co. v. Kuei, 194 F. Supp. 2d 995, 1011 (N.D. Cal. 2001).  Here, plaintiff has not alleged or presented any measurable evidence regarding

---

[3] Section 3345 establishes that when a defendant knew or should have known his conduct was directed to a senior citizen, and that conduct caused the senior to suffer loss of income or property, that the court may impose a remedy up to three times greater than the amount the trier of fact would impose absent such a finding.

defendant's wealth.  As such, the court cannot assess the appropriateness of punitive damages.

## IV. CONCLUSION

For the foregoing reasons, IT IS HEREBY RECOMMENDED that:

1. Plaintiff's motion for default judgment (ECF No. 23) be GRANTED.

2. Judgment be entered in plaintiff's favor and against defendant Charles.

3. Plaintiff be awarded damages in the amount of $2,121,675.05.

4. Plaintiff be awarded attorneys' fees and costs in the amount of $11,063.05.

IT IS ALSO HEREBY ORDERED that plaintiff shall forthwith serve copies of this order and findings and recommendations on defendant by U.S. mail at his last-known addresses.

Further, defendant Aegis has not yet appeared in this action.  Plaintiff has not requested dismissal of this defendant, nor has plaintiff requested an entry of default as to this defendant. **The court therefore orders plaintiff to file, within 21 days, a notice explaining the status of defendant Aegis and how plaintiff wishes to proceed.**

These findings and recommendations are submitted to the United States District Judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(l).  Within fourteen (14) days after being served with these findings and recommendations, any party may file written objections with the court and serve a copy on all parties.  Such a document should be captioned "Objections to Magistrate Judge's Findings and Recommendations."  Any reply to the objections shall be served on all parties and filed with the court within fourteen (14) days after service of the objections.  The parties are advised that failure to file objections within the specified time may waive the right to appeal the District Court's order.  Turner v. Duncan, 158 F.3d 449, 455 (9th Cir. 1998); Martinez v. Ylst, 951 F.2d 1153, 1156-57 (9th Cir. 1991).

Dated:  February 22, 2021

_____
CAROLYN K. DELANEY
UNITED STATES MAGISTRATE JUDGE

18:19cv1916 King. F&r default judgment