UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| GORDON KING, et al.,<br><br>   Plaintiffs,<br><br>   v.<br><br>PORTFOLIO PRESERVATION, LLC, et. al.,<br><br>   Defendants. | No. 2:19-cv-01916-JAM-CKD<br><br>ORDER AND FINDINGS AND RECOMMENDATIONS<br><br>(ECF Nos. 45, 46) |

Plaintiff Donna Rae King moves the court for default judgment against defendants Portfolio Preservation, LLC dba Aegis Shield and Aegis American Risk Management Group (together, the "Aegis defendants"). (ECF Nos. 45, 46) By these motions, plaintiff seeks default judgment against each Aegis defendant in the amount of $2,001,273.58. The Aegis defendants have neither appeared nor opposed the motions. This matter is appropriate for decision without oral argument. See Local Rule 230(g). The undersigned recommends the court grant the motions for default judgment.

**I. BACKGROUND**

Plaintiff Donna Rae King, and now deceased Gordon King, initiated this action on September 20, 2019, alleging violations of intentional fraud; negligent misrepresentation; professional negligence; breach of fiduciary duty; concealment; conspiracy to commit fraud;

1

financial elder abuse; California's Unfair Competition Law, Business and Professions Code §§ 17200 et seq; the Consumer Legal Remedies Act, Cal. Civ. Code §§ 1750 et seq; and Penal Code § 496. (ECF No. 1.) On October 5, 2020, plaintiff filed a statement of death of her husband and subsequently amended the complaint to substitute herself as his successor in interest. (ECF Nos. 19, 20, 22.)

Plaintiff alleges defendant Portfolio Preservation, LLC dba Aegis Shield is an expired LLC in Colorado. (ECF No. 1 ¶ 5.) Defendant Aegis American Risk Management Group, LLC is a voluntarily dissolved Colorado Corporation. (Id.)

Plaintiff alleges that in 2010, the Aegis defendants sold her and her husband a fraudulent tax scheme under the guise of an "investment strategy" that was based upon taking large deductions as an operating loss on tax returns. (ECF No. 1 ¶ 1.) Thereafter, plaintiff and her husband lost their initial investment and suffered tax penalties and underpayment penalties and interest. (Id.)

The Aegis defendants allegedly sold the scheme to plaintiff while defendants' agent or employee, Kingsley Charles ("Charles"), who is a co-defendant in this action, followed up with plaintiff on a regular basis to convince plaintiff and her husband to continue with their investment. (ECF No. 1 ¶¶ 11-12.) Charles assisted plaintiff with setting up Tiogo Pass LLC so plaintiff could place the forward contract into the pass-through company. (Id. ¶ 13.) Based on Charles' and the Aegis defendants' representations, plaintiff claims to have converted more than $825,0000 of their traditional IRA to a Roth IRA creating substantial taxable income, and then invested $145,000 in the forward contract in September or October 2010. (Id. ¶ 14.) Charles and the Aegis defendants assured plaintiff the additional taxable income would not negatively affect plaintiff and her husband because of losses that would be claimed based upon their investment into the leveraged forward contract. (Id.)

After the investment, plaintiff's accountant did not know how to take the proposed deductions without triggering an audit examination and ultimately tax deficiency and penalties and interest and was thus unable to assist with plaintiff's taxes. (ECF No. 1 ¶ 15.) Charles assured plaintiff the situation was fine and referred plaintiff to defendant NMS, stating the Aegis

2

defendants and NMS frequently worked together such that NMS would be familiar with this type of investment and tax situation. (Id. ¶ 16.) Plaintiffs thereby retained NMS to prepare their Federal and California tax returns from 2010 to 2015. (Id. ¶ 18.)

In April 2014, plaintiff's 2011 through 2013 returns were selected for examination and NMS assured plaintiff this was routine and that they would handle the examination. (ECF No. 1 ¶ 19.) On November 12, 2015, the IRS provided a proposed assessment of owed taxes and penalties for years 2011 through 2013. (Id. ¶ 20.) NMS advised plaintiff she shouldn't be concerned and that they would resolve the situation. (Id. ¶ 21.) NMS appealed the decision and allegedly handled the appeal until the IRS sent plaintiff a notice of deficiency on January 12, 2017. (Id.)

The IRS determined plaintiff and her husband underpaid taxes due to deductions that should not have been taken based upon the leveraged forward contracts in the amount of $126,708.00 in 2011, $130,413.00 in 2012, and $5,149.00 in 2013. (ECF No. 1 ¶ 22.) The IRS assessed penalties in the amounts of $25,341.60, $26,082.60, and $1,029.80, respectively. (Id.) Plaintiff retained tax counsel for a fee of $50,500, who were able to appeal the Notice of Deficiency to the tax court and mitigate penalties and interest in the final tax court judgment to $117,420, $125,605, and $1,453 for years 2011 through 2013, respectively, with penalties of $23,484, $25,121, and $290.60, respectively. (Id. ¶¶ 24, 25.)

As a result of defendants' conduct, plaintiff alleges she and her husband were damaged in the following amounts:

  a. $145,000 for their initial investment into the leveraged forward contract scheme;

  b. $244,508 in Federal taxes paid as a result of the IRA conversion;

  c. $48,895.60 in Federal tax penalties which plaintiffs paid on the tax deficiencies;

  d. $74,514.54 in Federal tax interest which plaintiffs paid as a result of the tax deficiencies and penalties;

  e. State of California tax deficiencies, penalties, and interest;

  f. $17,000 paid to NMS, including for representation during the audit proceedings;

  g. $50,500 to plaintiffs' retained tax counsel.

(Id. ¶ 27.)

A default judgment was entered in favor of plaintiff and against defendant Charles on April 27, 2021. (ECF No. 30.) On June 29, 2021, plaintiff and defendant Charles filed a stipulation to lift the default judgment against defendant Charles. (ECF No. 37.)

The Aegis defendants were both served on May 22, 2021 via hand service to the California Secretary of State pursuant to California Corporations Code section 17701.16(c) and this court's April 26, 2021 order. (ECF Nos. 32, 33.) Both Aegis defendants have failed to appear or respond to the complaint. As such, plaintiff moved for entry of default and the Clerk of the Court entered default as to both Aegis defendants on June 30, 2021. (ECF Nos. 35, 36, 38, 39.) Plaintiff then brought the pending motions for default judgment, through which she seeks judgment for the claims pleaded in the sum of $2,001,273.58, plus attorneys' fees and punitive damages. (ECF Nos. 45 & 46 ¶¶ 4, 5.)

## II. LEGAL STANDARDS

Pursuant to Federal Rule of Civil Procedure 55, default may be entered against a party against whom a judgment for affirmative relief is sought if that party fails to plead or otherwise defend against the action. See Fed. R. Civ. P. 55(a). The decision to grant or deny an application for default judgment lies within the sound discretion of the district court. Aldabe v. Aldabe, 616 F.2d 1089, 1092 (9th Cir. 1980).

Once default is entered, as a general rule, well-pleaded factual allegations in the operative complaint are taken as true except for the allegations relating to damages. TeleVideo Sys., Inc. v. Heidenthal, 826 F.2d 915, 917-18 (9th Cir. 1987) (per curiam) (citing Geddes v. United Fin. Group, 559 F.2d 557, 560 (9th Cir. 1977) (per curiam)); accord Fair Housing of Marin v. Combs, 285 F.3d 899, 906 (9th Cir. 2002). "[N]ecessary facts not contained in the pleadings, and claims which are legally insufficient, are not established by default." Cripps v. Life Ins. Co. of N. Am., 980 F.2d 1261, 1267 (9th Cir. 1992). Where the pleadings are insufficient, the court may require the moving party to produce evidence in support of the emotion for default judgment. See TeleVideo Sys., Inc., 826 F.2d at 917-18.

Default judgments are ordinarily disfavored. Eitel v. McCool, 782 F.2d 1470, 1472 (9th Cir. 1986). In making the determination whether to grant a motion for default judgment, the court

4

considers the following factors:

> (1) the possibility of prejudice to the plaintiff, (2) the merits of plaintiff's substantive claim, (3) the sufficiency of the complaint, (4) the sum of money at stake in the action; (5) the possibility of a dispute concerning material facts; (6) whether the default was due to excusable neglect, and (7) the strong policy underlying the Federal Rules of Civil Procedure favoring decisions on the merits.

Eitel, 782 F.2d at 1471-72.

### III. DISCUSSION

#### A. Eitel Factors

##### 1. Possibility of Prejudice to Plaintiff

The first factor considers whether the plaintiff would suffer prejudice if default judgment is not entered. Such potential prejudice to the plaintiff weighs in favor of granting default judgments. See PepsiCo, Inc., v. California Security Cans, 238 F. Supp. 2d 1172, 1177 (C.D. Cal. 2002). Plaintiff filed suit on September 20, 2019, served the Aegis defendants on May 22, 2021, and the Aegis defendants have failed to respond to the complaint or otherwise put forth a defense. The present litigation therefore cannot move forward, prejudicing plaintiff and leaving no recourse other than to seek default judgments. Accordingly, the first factor weighs in favor of entering default judgments.

##### 2. Merits of the Substantive Claims and the Sufficiency of the Complaint

The court considers the merits of the substantive claims and the sufficiency of the complaint together due to the relatedness of the inquiries. The court considers whether the allegations in the complaint are sufficient to state a claim on which plaintiff may recover. See Danning v. Lavine, 572 F.2d 1386, 1388 (9th Cir. 1978); PepsiCo, Inc., 238 F. Supp. 2d at 1175.

###### a. Intentional Fraud and Negligent Misrepresentation

Under California law, the elements of intentional misrepresentation are: "(1) misrepresentation (false representation, concealment, or nondisclosure); (2) knowledge of falsity (scienter); (3) intent to defraud; (4) justifiable reliance; and (5) resulting damages." Dougherty v. Bank of Am., N.A., 177 F. Supp. 3d 1230, 1245 (E.D. Cal. 2016); Charnay v. Cobert, 145 Cal. App. 4th 170, 184 (2006). Negligent misrepresentation requires: (1) a misrepresentation of a past

5

or existing material fact; (2) without reasonable grounds for believing it to be true; (3) with intent to induce another's reliance on the fact misrepresented; (4) justifiable reliance thereon by the party to whom the misrepresentation was directed; and (5) damages. Takano v. Procter & Gamble Co., No. 2:17-CV-00385-TLN-AC, 2018 WL 5304817, at *12 (E.D. Cal. Oct. 24, 2018) (citing Fox v. Pollack, 181 Cal. App. 3d 954, 962 (1986)).

Plaintiff alleges both Aegis defendants "made several representations to [plaintiff] that the leveraged forward contract was a sound investment." (ECF No. 1 ¶ 29.) Plaintiff states the Aegis defendants "knew their representations were false when he made them or made them recklessly or without regard for their truth." (Id. ¶ 32.) Plaintiff alleges the false statements of the Aegis defendants were "made with malice" and plaintiff "reasonably relied on their representations." (Id. ¶¶ 33-35.)

These allegations are taken as true following an entry of default. Accordingly, plaintiff has met the burden to allege a claim for intentional fraud as well as negligent misrepresentations.

### b. Conspiracy to Commit Fraud

In order to state a claim for civil conspiracy, a plaintiff must allege: (1) the formation and operation of the conspiracy and (2) damage to the plaintiff from an act or acts in furtherance of the common design. Applied Equip. Corp. v. Litton Saudi Arabia Ltd., 7 Cal. 4th 503, 511 (1994) (citing Doctors' Co. v. Sup. Ct., 49 Cal. 3d 39, 44 (1989)). To state a claim for conspiracy to commit fraud, plaintiff must adequately plead the underlying fraud claim. Tatung Co., Ltd. v. Hsu, No. SA CV 13-1743-DOC ANX, 2015 WL 11072178, at *26 (C.D. Cal. Apr. 23, 2015) (citing Oregon Laborers-Employers Health & Welfare Trust Fund v. Philip Morris Inc., 185 F.3d 957, 969 (9th Cir. 1999)).

Plaintiff alleges all defendants acted together in conspiracy to induce plaintiff to invest in the forward leveraged contracts, and that once plaintiff required accounting services due to the impropriety of deductions, the Aegis defendants and Charles then recommended NMS. (ECF No. 1 ¶ 66.) Plaintiff alleges all defendants were aware of the others' roles in the conspiracy as well as the plan to defraud investors. (Id. ¶ 67.) Plaintiff additionally alleges harm due to the alleged conspiracy.

As previously addressed, plaintiff has met the burden of pleading the underlying fraud claim. Plaintiff has also sufficiently pled a factual basis for a cause of action for conspiracy to commit fraud.

### c. Financial Elder Abuse

To allege financial elder abuse, plaintiff must plead that defendants "took, obtained, or retained (or assisted in taking, obtaining, or retaining) [p]laintiff's property for wrongful use, or with the intent to defraud, or by undue influence. Wrongful use can be shown where an elder has a contractual right to property, defendant breaches that contract, and defendant 'actually knows that it is engaging in a harmful breach, or reasonably should be aware of the harmful breach.'" Yokell v. Draper, No. 18-CV-02124-JSC, 2018 WL 3417514, at *9 (N.D. Cal. July 13, 2018) (quoting Paslay v. State Farm General Ins. Co., 248 Cal. App. 4th 639, 658 (Ct. App. 2016)).

Plaintiff alleges Gordon King was over 65 years of age at the time the incidents occurred. (ECF No. 1 ¶ 73.) Plaintiff alleges the Aegis defendants wrongfully took or assisted in taking Gordon King's property with the intent to defraud him, causing the harm pleaded. Taken as true, these allegations state a claim for financial elder abuse.

### d. Violations of California Unfair Competition Laws, Bus. & Prof. Code §§ 17200 et seq

A claim under the California Unfair Competition Laws, Bus. & Prof. Code §§ 17200 et seq ("UCL") must rest on a violation of some independent substantive statute, regulation, or case law. See Farmers Ins. Exch. v. Superior Court, 2 Cal. 4th 377, 383 (1992) (action under section 17200 borrows violations of other laws); see also Daro v. Superior Court, 151 Cal. App. 4th 1079, 1092-93 (2007); Saunders v. Superior Court, 27 Cal. App. 4th 832, 838 (1994) (violation under "unlawful" prong of UCL requires underlying violation of law); Drum v. San Fernando Valley Bar Ass'n, 182 Cal. App. 4th 247, 256 (2010) (claim under "unfair" prong requires showing that defendant engaged in practice that violated specific constitutional, statutory, or regulatory provision or that utility of alleged business practice outweighed by harm to consumers); Hall v. Time Inc., 158 Cal. App. 4th 847, 855 (2008) (claim under "fraudulent" prong of UCL requires showing of reliance on alleged misrepresentation).

Plaintiff alleges the Aegis defendants violated the UCL by fraudulently misrepresenting the soundness of the leveraged forward contract investment and failing to advise plaintiffs about the scheme. (ECF No. 1 ¶¶ 79-80.) Plaintiff further states that "[t]he acts described... are unlawful within the meaning of the unfair competition law because they constitute a violation of California Civil Code sections 1709 and 1710, a violation of the AICPA and Circular 230 standards, a violation of the Consumer Legal Remedies Act, Civil Code section 1750 et seq., a violation of the Elder Abuse and Dependent Adult Civil Protections Act, Welfare and Institutions Code section 15610.30, and other California state laws as set forth in this Complaint." (Id.)

At minimum, plaintiff has alleged that she relied on defendants' misrepresentations to "invest" in the leveraged forward contract scheme. These allegations, taken as true, are sufficient to state a claim for a violation of the UCL.

### e.   Violations of California Consumer Legal Remedies Act, Civ. Code §§ 1750 et seq

A plaintiff may bring a claim under the CLRA so long as she "suffer[ed] any damage as a result of" a proscribed practice under the CLRA. Cal. Civ. Code § 1780(a). This means that to adequately plead a CLRA claim, a plaintiff must allege she relied on the defendant's alleged misrepresentation and that she suffered economic injury as a result. Doe v. SuccessfulMatch.com, 70 F. Supp. 3d 1066, 1075 (N.D. Cal. 2014) (citing Durell v. Sharp Healthcare, 183 Cal.App.4th 1350 (2010)).

Plaintiff has alleged she relied on defendants' misrepresentations to "invest" in the leveraged forward contract scheme. Plaintiff's allegations, taken as true, are sufficient to state a claim for a violation of the CLRA.

### f.   Violations of California Penal Code § 496

Cal. Penal Code § 496(c) permits victims of crimes defined in § 496(a) to initiate a civil lawsuit to recover treble the amount of actual damages, costs, and reasonable attorneys' fees. Allure Labs, Inc. v. Markushevska, 606 B.R. 51, 57 (N.D. Cal. 2019). "[A] criminal conviction is not a prerequisite" to bring a claim under Section 496. Worldwide Travel, Inc. v. Travelmate US, Inc., No. 14-CV-00155-BAS(DHB), 2016 WL 1241026, at *7 (S.D. Cal. Mar. 30, 2016). "[T]he

few California courts that have addressed the statute in the civil context, have... permitted civil suits under Section 496 against a defendant who allegedly stole the property at issue." Id.

Plaintiff alleges defendants obtained plaintiffs' property by "theft" within the meaning of California Penal Code § 496. (ECF No. 1 ¶ 95.) "California Penal Code section 496(a) uses the term 'theft' without including a definition, thereby incorporating California's general theft definition set forth in California Penal Code section 484(a)." United States v. Flores, 901 F.3d 1150, 1157 (9th Cir. 2018) (citing Carrillo-Jaime v. Holder, 572 F.3d 747, 751 (9th Cir. 2009)). Section 484(a) sets forth that any individual who "fraudulently appropriate(s) property which has been entrusted to him or her, or who shall knowingly and designedly, by any false or fraudulent representation or pretense, defraud any other person of money... [or] property... is guilty of theft."

Because plaintiff alleges defendants knowingly received, concealed, and withheld their property, which had been obtained by means of false or fraudulent representations or pretense, the court finds plaintiff has sufficiently alleged a claim under California Penal Code § 496.

### 3. The Sum of Money at Stake

Under the fourth factor cited in Eitel, "the court must consider the amount of money at stake in relation to the seriousness of defendant's conduct." PepsiCo, Inc., 238 F. Supp. 2d at 1176-77; see also Philip Morris USA, Inc. v. Castworld Prods., Inc., 219 F.R.D. 494, 500 (C.D. Cal. 2003). This requires the court to assess whether recovery sought is proportional to the harm caused by defendants' conduct. See Vogel v. Rite Aid Corp., 992 F. Supp. 2d 998, 1012 (C.D. Cal. 2014) ("Default judgment is disfavored where the sum of money at stake is too large or unreasonable in relation to defendant's conduct").

Here, plaintiff seeks a total of $2,001,273.58 in damages. (ECF Nos. 45-1 & 46-1, ¶ 4.) Plaintiff requests $661,389.41 in actual damages, trebled pursuant to Cal. Civ. Code § 3345; $5,000 in statutory damages pursuant to Cal. Civ. Code § 1780(b); and $12,105.35 in attorneys' fees pursuant to Cal. Welfare and Institutions Code § 15657.5 and Cal. Penal Code § 496. (Id.)

The overall sum of money at stake is not so large or excessive in relation to the harm as to militate against the entry of default judgment. While the amount at stake is substantial, plaintiff has provided detailed and unrebutted documentation in support of her motion (see ECF Nos. 45-1

9

& 46-1 at 20-46), and it is well settled that defendants "should not be allowed to evade judgment as a result of failing to appear," Emerging Acquisitions, LLC v. Oracle Installations & Fabricators, LLC, No. 6:20-CV-00453-MK, 2021 WL 325711, at *2 (D. Or. Feb. 1, 2021) (quoting United States v. Kelton, No. 1:15-cv-197-AA, 2015 WL 9809799, at *2 (D. Or. Dec. 19, 2015) ("The amount of damages at issue is substantial, so this Eitel factor slightly favors the [defendants]. But the [plaintiff] has submitted a declaration and supporting exhibits verifying the assessments due from the [defendants]."). Thus, this factor slightly favors the entry of a default judgment.

### 4. The Possibility of a Dispute Concerning Material Facts

The court may assume the truth of well-pleaded facts in the complaint following the clerk's entry of default. Thus, there is no likelihood that any genuine issue of material fact exists. See, e.g., Elektra Entm't Group Inc. v. Crawford, 226 F.R.D. 388, 393 (C.D. Cal. 2005) ("Because all allegations in a well-pleaded complaint are taken as true after the court clerk enters default judgment, there is no likelihood that any genuine issue of material fact exists"); accord Philip Morris USA, Inc., 219 F.R.D. at 500; PepsiCo, Inc., 238 F. Supp. 2d at 1177. In this case, there is no indication that there are material facts in dispute.

### 5. Whether the Default Was Due to Excusable Neglect

The record contains no indication that defendants' defaults were due to excusable neglect. Due process requires that interested parties be given notice of the pendency of the action and be afforded an opportunity to present their objections before a final judgment is rendered. Mullane v. Central Hanover Bank & Trust Co., 339 U.S. 306, 314 (1950). While there is always a possibility that a defendant might appear and claim excusable neglect, where the defendants "were properly served with the Complaint, the notice of entry of default, as well as the papers in support of the instant motion," this factor favors entry of default judgment. Shanghai Automation Instrument Co. Ltd. v. Kuei, 194 F. Supp. 2d 995, 1005 (N.D. Cal. 2001). Despite having been served by hand to the California Secretary of State pursuant to California Corporations Code section 17701.16(c) and this court's April 26, 2021 order, defendants have failed to respond. Accordingly, this factor favors the entry of a default judgment.

### 6. The Strong Policy Underlying the Federal Rules of Civil Procedure Favoring Decisions on the Merits

"Cases should be decided upon their merits whenever reasonably possible." Eitel, 782 F.2d at 1472. But the mere existence of Rule 55(b) "indicates that this preference, standing alone, is not dispositive." PepsiCo, Inc., 238 F. Supp. 2d at 1177 (citation omitted); see also Craigslist, Inc. v. Naturemarket, Inc., 694 F. Supp. 2d 1039, 1061 (N.D. Cal. 2010). Rule 55 allows a court to decide a case before the merits are heard if defendant fails to appear and defend. See PepsiCo, Inc., 238 F. Supp. 2d at 1177. Accordingly, although the court is cognizant of the policy in favor of decisions on the merits, that policy does not, by itself, preclude the entry of default judgment.

### 7. Recommendation

Taken together, the Eitel factors support granting the request for default judgment. The undersigned recommends default judgment be entered as to both Aegis defendants.

### B. Terms of the Judgment to be Entered

Plaintiff prays for relief totaling $2,001,273.58 in the pending motions for default judgment. This total includes:

 a. $661,389.41 in actual damages, trebled pursuant to Cal. Civ. Code § 3345, consisting of the following.
  i. $145,000 plaintiff paid to invest in the Aegis leveraged forward contract;
  ii. $244,508 plaintiff paid in Federal taxes as a result of Charles' conduct;
  iii. $48,895.60, plaintiff paid in Federal tax penalties;
  iv. $74,514.54 plaintiff paid in Federal tax interest;
  v. $16,971.54 plaintiff paid to dismissed defendant NMS, Inc for CPA representation during IRS audit proceedings which proceeded as a result of Charles' conduct;
  vi. $50,500 plaintiff paid to Moskowitz LLP as tax counsel paid in attempt to mitigate harm caused by Charles' conduct;

|   |   |   |
|---|---|---|
|   | vii. | $70,914 in California taxes paid; |
|   | viii. | $10,085.73 in California tax interest. |
| b. | Statutory damages of $5,000 pursuant to Cal. Civ. Code § 1780(b); |
| c. | Attorneys' fees in the amount of $12,105.35, pursuant to Cal. Welf. & Inst. Code § 15657.7 and Cal. Penal Code § 496. |

(ECF Nos. 45-1 & 46-1 at 2-3.)

Plaintiff's request for actual damages is supported by the evidence plaintiff provided with the declarations accompanying the motions for default. (See ECF Nos 45-1 and 46-1.) Treble damages are appropriate pursuant to Cal. Civ. Code § 3345, which establishes that when a defendant knew or should have known his conduct was directed to a senior citizen, and that conduct caused the senior to suffer loss of income or property, the court may impose a remedy up to three times greater than the amount the trier of fact would impose absent such a finding.

Plaintiff is additionally entitled to reasonable attorneys' fees pursuant to Cal. Penal Code § 496. Plaintiffs' counsel has submitted a declaration in support of the award of attorneys' fees that provides his billing rates, the hours spent on this matter, and that he is "certified by the California State Bar Board of Legal Specialization in Legal Malpractice Law." (ECF No. 45-2 & 46-2 ¶¶ 3-5.) The amount claimed, $12,105.35, is reasonable with respect to the hourly rate and the number of hours expended on this litigation.

The undersigned would decline plaintiff's request for punitive damages. (See Id. 45-1 & 46-1, ¶ 5.) In order to determine whether punitive damages should be awarded, the court considers: (1) the nature of a defendant's acts; (2) the amount of compensatory damages awarded; and (3) the wealth of the defendant. Prof'l Seminar Consultants, Inc. v. Sino Am. Tech. Exch. Council, Inc., 727 F.2d 1470, 1473 (9th Cir. 1984). However, the court "cannot make a fully informed determination of whether an award of punitive damages is excessive unless the record contains evidence of a defendant's financial condition." Shanghai Automation Instrument Co. v. Kuei, 194 F. Supp. 2d 995, 1011 (N.D. Cal. 2001). Here, plaintiff has not alleged or presented any measurable evidence regarding defendants' wealth. As such, the court cannot assess the appropriateness of punitive damages.

## IV. CONCLUSION

In accordance with the above, IT IS HEREBY RECOMMENDED:

1. Plaintiff's motions for default judgment (ECF Nos. 45, 46) be GRANTED;
2. Judgment be entered in plaintiff's favor and against defendant Portfolio Preservation, LLC dba Aegis Shield, and against Aegis American Risk Management Group.
3. Plaintiff be awarded damages in the amount of $2,001,273.58.
4. Plaintiff be awarded attorneys' fees and costs in the amount of $12,105.35.

IT IS ALSO HEREBY ORDERED that plaintiff shall forthwith serve copies of this order and findings and recommendations on defendants by U.S. mail at their last-known addresses.

These findings and recommendations are submitted to the United States District Judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(l). Within fourteen (14) days after being served with these findings and recommendations, any party may file written objections with the court and serve a copy on all parties. Such a document should be captioned "Objections to Magistrate Judge's Findings and Recommendations." Any reply to the objections shall be served on all parties and filed with the court within fourteen (14) days after service of the objections. The parties are advised that failure to file objections within the specified time may waive the right to appeal the District Court's order. Turner v. Duncan, 158 F.3d 449, 455 (9th Cir. 1998); Martinez v. Ylst, 951 F.2d 1153, 1156-57 (9th Cir. 1991).

Dated: November 18, 2021

_/s/ Carolyn K. Delaney_
CAROLYN K. DELANEY
UNITED STATES MAGISTRATE JUDGE

8.king1916.mdj2